FILED
 2014 Apr-15 AM 08:15
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOE RODDA,                )<br>                                     )<br>   Plaintiff,               )<br>                                     )<br>v.                                 )<br>                                     )<br>JOY MINING MACHINERY;   )<br>MATRIC; MATRIC LIMITED;  )<br>EBM-PAPST, INC.,             )<br>                                     )<br>   Defendants.           )<br>                                     ) | Case No. 7:13-CV-1342-SLB |

## MEMORANDUM OPINION

This case is before the court on defendant EBM-Papst, Inc.'s Motion to Dismiss (Pro Tanto) Based Upon Spoliation of Evidence. (Doc. 22.)[1] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motion is due to be denied.

## FACTUAL BACKGROUND

This products liability case arises from an accident involving an alleged runaway mine car. When the "shuttle car" crashed into the rib of a passageway, a large rock fell and pinned plaintiff in the car. (Doc. 1-1 at 6 ¶ 29.) Plaintiff alleges that a defect in the car and its component parts caused it to "thermal[] out" and malfunction. (*Id*. at ¶¶ 29-31.) Two such parts are cooling fans manufactured by defendant EBM-Papst, Inc. (*Id*. at 3 ¶ 4.) Plaintiff was

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

severely injured. He spent at least thirty-one days in the intensive care unit of a hospital, connected to a ventilator and a feeding tube, unable to move. (Doc. 33-2 ¶ 2.) Within a week of being released from the hospital, plaintiff hired an attorney. (*Id*. at ¶ 2; doc. 33-1 at ¶ 3.) Four days later, the attorney sent plaintiff's employer, Drummond Company ("Drummond"), a letter "requiring it to preserve the shuttle car and all its parts." (Doc. 33-1 ¶¶ 3-4; doc. 1-1 at 4 ¶ 16.)

Nearly two years passed before plaintiff brought suit against a number of defendants, including EBM-Papst, but not Drummond, plaintiff's employer. (*See* doc. 1-2 at 4.) According to EBM-Papst, "Drummond's counsel's office reports that the fans in question were thrown out prior to receipt of an evidence preservation letter from the [p]laintiff," and "there is no reasonable expectation that the fans and connecting wires will be found or recovered from disposal." (Doc. 22 at 2.) EBM-Papst asserts that it never had the chance to inspect the fans and that the inspections performed by other entities on the fans are inadequate. (*Id*. at 6-8.) Plaintiff did not participate in the investigation of the accident, which was apparently conducted by the Department of Labor's Mine Safety and Health Administration ("MSHA"), (*see* docs. 34-3, 34-4, and 34-5), nor did plaintiff take possession of the fans or any other parts. (Doc. 33-2 ¶ 3.)

## ANALYSIS

EBM-Papst ("defendant") moves for dismissal based on spoliation of "the most important piece of evidence" in the case against it: the fans it manufactured. (*See* doc. 22 at

4.) Although it is an easy one, the first question is what law applies. As plaintiff notes, (doc. 33 at 5), "because spoliation sanctions constitute an evidentiary matter," federal law governs even in diversity suits. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). In 2005, the Eleventh Circuit had not yet "set forth specific guidelines" on spoliation sanctions, so the court's opinion in *Flury* was "informed by Georgia law," as Georgia law "provide[d] some guidance and was relied upon by the district court and the parties," and was "wholly consistent with federal spoliation principles." *Id.* at 944. Defendant construes this language to mean that the spoliation law of the forum state is the relevant law in federal court. (*See* doc. 34 at 11) ("In [*Flury*], the Eleventh Circuit accepted the use of state spoliation law, in that case Georgia law *and in our case Alabama law*.") (emphasis added). That was the exact proposition that *Flury* rejected. 427 F.3d at 943-44 (declining to follow *Nationwide Mutual Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999), a case overruled post-*Flury* by *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc)). To clear up any confusion, the relevant law on spoliation sanctions[2] in federal court is the same whether the litigation is in Alabama, Georgia, or Florida, because it is always federal law.

The court's "broad discretion" to impose spoliation sanctions derives from its "inherent power to manage its own affairs and to achieve the orderly and expeditious

---

[2]The *tort* of spoliation is distinct. *Cf. Smith v. Atkinson*, 771 So. 2d 429 (Ala. 2000); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1287-88 (11th Cir. 2002) (analyzing plaintiff's potential spoliation tort claim according to Florida law).

3

disposition of cases." *Flury*, 427 F.3d at 944. "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id*. Since dismissal is the ultimate sanction, it "should only be imposed where there is a showing of bad faith and where lesser sanctions will not suffice." *Id*.

Unfortunately for defendant, there is no going over or under that last sentence—got to go through it.[3] And judging from the Complaint, plaintiff's affidavit, and the instant Motion, plaintiff's actions appear far from "bad." Upon being released from the ICU, he went forthwith to select an attorney, who promptly sent out a preservation letter. But defendant essentially argues that all that is really required for dismissal is a breach of the duty to preserve, and maybe not even a breach by a plaintiff him- or herself, but by an intervenor[4] "workers' compensation subrogation lienor," Drummond. (*See* doc. 22 at 5.) As plaintiff points out, (doc. 33 at 2-5), that is not what is taught by the cases defendant cites—*Flury* and *Cincinnati Insurance Company v. Synergy Gas, Inc.*, 585 So. 2d 822 (Ala. 1991)—or any Eleventh Circuit case of which the court is aware.

A few quotes from the two cases show how far defendant's argument strays from its

---

[3]Defendant tries to avoid it first by way of state precedent, stating that "Alabama law contains no absolute requirement of bad faith for dismissal," (doc. 34 at 11). As explained, that way is blocked by the fact that federal law governs. Then defendant attacks it as dicta, referencing the one-paragraph "Conclusion" at the end of *Flury*. (*Id*. at 12.) No go there either: as will be explained more fully below, the Conclusion in *Flury*, 427 F.3d at 947, depends on the "[*p*]*laintiff's* spoliation" and the plaintiff (or someone acting as his legal agent) "inexplicably ignor[ing]" defendant's preservation letter.

[4]Drummond's Motion to Intervene, (doc. 39), currently pending before the court, will be granted.

authority. In *Cincinnati Insurance Company*, "the plaintiffs had deliberately disposed" of the evidence, *id.* at 827, and the court noted that "'willfulness' on the part of the noncomplying *party* is a key factor supporting a dismissal," *id.* at 826 (emphasis added). In *Flury*, the *plaintiff* "ignored" the *defendant's* preservation letter and "allowed" the most important piece of evidence to be sold for salvage, 427 F.3d at 945, conduct which the court describes as "extraordinary," *id.* at 943, and, considering the state of the remaining evidence, left "potential for abuse," *id.* at 946. By mentioning Drummond, defendant is probably trying to liken plaintiff's employer to the insurance company plaintiffs who "basically" stood to recover whatever their co-plaintiff insureds would have in *Cincinnati Insurance Company* and *Smedley v. Capitol Chevrolet, Inc.*, 614 So. 2d 439 (Ala. 1993). But the circumstances here, involving potential personal injury damages, are fundamentally different. *Cf. Smedley*, 614 So. 2d at 443 ("We point out that this is basically a subrogation claim brought by the same insurance company that ordered the destruction of items that would have been crucial evidence in that company's action."); *Formosa v. Lowe's Home Centers, Inc.*, 806 F. Supp. 2d 1181, 1190 (N.D. Ala. 2011) (noting that "[p]ain and suffering damages are not separately allowable in worker's compensation cases, but they are recoverable in [product liability] claims").

Other cases from the Eleventh Circuit Court of Appeals put defendant's argument to rest. "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference."

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009); (*see* doc 33 at 3) (citing *Mann*).[5] In *Mann* and the case it cites, *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997), the plaintiffs were asking the court to infer that because the defendants were missing a particular piece of evidence, that evidence would have been favorable enough to create an issue of fact. But that was too much of a leap under the circumstances in *Bashir*, where the strength of defendant's evidence otherwise entitled it to summary judgment.[6] *See id*. at 932. What the plaintiff needed was a bridge, some way of showing that the destruction of the evidence was not just unfortunate, but suspicious.

The usual way is by showing evidence of bad faith in the destruction, which implies "consciousness of a weak case." *Id.* at 931 (citations omitted). But the court suggested that there might be other circumstances where a "wholly unexplained loss of evidence" warrants "an inference of bad faith and thus an adverse inference." *Id.* at 932. For example, where the margin of error is tight. The court distinguished *Stanton v. National Railroad Passenger Corp.*, 849 F. Supp. 1524 (M.D. Ala. 1994), where the defendant's "engineer testified that at the time of the accident, the train was traveling only one mile per hour under the speed limit." *Bashir*, 119 F.3d at 932. Distinguishing *Stanton* on this basis implies that it was too convenient for the defendant to be missing, inexplicably, the one piece of objective evidence

---

[5]Although the difference between an adverse inference and dismissal might be relevant in some circumstances, it is not here.

[6]In *Mann*, the issue of spoliation is hardly discussed. *See Mann*, 588 F.3d at 1310. This court notes the case to show the ongoing vitality of *Bashir*, a pre-*Flury* case, and because plaintiff brings it to the court's attention. (Doc. 33 at 3.)

(a speed-recording tape) that could have verified that the testimony was as accurate as it needed to be. In *Bashir*, the defendant's evidence on summary judgment was "exceedingly strong," and the standalone fact that the data tape from the train's speed recording device was inexplicably missing could not do the double work of inferring first that the tape's disappearance involved bad faith, and second that the data would have been favorable to plaintiff. *Bashir*, 119 F.3d at 931-32.

In its reply brief, defendant suggests that because (1) Drummond's subrogation lien for workers' compensation benefits paid to plaintiff makes "Drummond fully aligned financially with [plaintiff] and against EBM-Papst," and (2) Drummond lost the evidence, "[a] permissible inference is that the [lost] evidence [would have] help[ed] EBM-Papst." (Doc. 34 at 10-11.) This gets it all backwards. The court has assumed, for purposes of this Motion, that the evidence lost would have been favorable to defendant. But this is not plaintiff's "'put up or shut up' moment" to show how he could *prove* his case. *See Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 476 (7th Cir. 2010) (describing the summary judgment stage). The inference defendant needs at this early stage—before even a Rule 16(b) scheduling conference has taken place—is an inference of bad faith on the part of plaintiff that could justify punishing him by dismissing his claims against defendant before he can

argue their merit.[7] And this inference in all likelihood needs to be not merely permissible, but compelling.

Defendant is correct to seize on the issue of fairness. (*See* doc. 22 at 6) ("In no way can it ever be fair to judge EBM-Papst concerning fans that no longer exist and were never sufficiently examined and tested."). But the court does not yet have the evidence to determine what will or will not "ever be fair" in this case. Plaintiff asserts that "[t]he existing photographs, [MSHA] investigative reports and inspection notes present sufficient evidence that the cooling fans in question malfunctioned due to physical damage." (Doc. 33 at 7) (footnotes omitted). They might, *see Graham v. Teledyne-Continental Motors*, 805 F.2d 1386, 1390 (9th Cir. 1986) (suggesting that a party's "avenues . . . to obtain substantially similar proof" may be sufficient when a government regulatory agency performs the destructive testing of the evidence); defendant disagrees, of course. What is clear is that details will be important. Once presented with the entire story, on a motion for summary judgment or at the close of the evidence at trial,[8] the court will be able to make

---

[7]Defendant asserts that the court "could find bad faith as to Drummond," but stops short of asserting that the court could impute that potential bad faith to plaintiff through agency principles. (Doc. 34 at 11); *cf. Bouve & Mohr, LLC v. Banks*, 618 S.E.2d 650, 654 (Ga. Ct. App. 2005) ("Sanctions may be imposed against a litigant based on a third party's spoliation of evidence if the third party acted as the litigant's agent in destroying or failing to preserve the evidence.").

[8]Plaintiff and EBM-Papst have each filed an affidavit of an expert, but the affidavits do not flesh out the case like full discovery tends to do. Therefore, as discussed at oral argument, the court will deny without prejudice plaintiff's Motion to Strike the Affidavit of John Machnicki, CFEI, (doc. 32), and defendant's Motion to Strike Affidavit of George E. (Ted) Page, BSEE, (doc. 35).

determinations such as: (1) whether it is possible and fair for plaintiff to prove his case against defendant based on the data actually gathered from the cooling fans; or (2) whether this case presents an "other circumstance" left open in *Bashir* where an inference of bad faith is warranted even though none is apparent. But demonstrable bad faith on the part of the plaintiff is the only thing that might have rendered further factual development unnecessary, and here, defendant does not even allege that plaintiff acted in bad faith. Therefore, punishing plaintiff by dismissing his claims against defendant before he has the chance to argue their merit is inappropriate.

## CONCLUSION

Defendant's Motion to Dismiss does not prove, or even directly allege, the elements necessary to impose sanctions on plaintiff for spoliation. Therefore, the Motion is due to be denied. An order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 14th day of April, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE